UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BRIAN D. MAGGIO, | ) |
| | ) |
|        Petitioner, | ) |
| | ) |
| v. | )   Case No.  20-2361 |
| | ) |
| JOHN BARWICK, Warden, | ) |
| Pinckneyville Correctional Center, | ) |
| | ) |
|        Respondent. | ) |

### ORDER & OPINION

Petitioner Brian D. Maggio, a prisoner at the Pinckneyville Correctional Center, brings this *pro se* habeas corpus action under 28 U.S.C. § 2254 challenging his 2015 first degree murder conviction from the Sixth Judicial Circuit Court of Champaign County ("trial court"). (D. 1). For the reasons stated below, this Court denies Maggio's § 2254 petition and declines to issue a certificate of appealability.

### I.   BACKGROUND

**A. Pre-Trial Background**

On July 21, 2010, Petitioner Brian D. Maggio ("Petitioner") shot and killed his brother, Mark Maggio, while he was attempting to leave the Tolono IGA Store. The next day, the State charged Petitioner with four counts of first-degree murder under alternative theories (720 ILCS 5/9-1(a)(1)-(2)), each of which carried a mandatory sentence of 20–60 years' imprisonment, and a firearm sentencing enhancement of 25 years-to-life, to be added to the term of imprisonment pursuant to 730 ILCS 5/5-8-1(a)(1)(d)(iii). The Champaign County Public Defender's office was appointed to represent Petitioner, and in January 2011, presented Petitioner with a plea offer from the State. The plea offer required Petitioner to plead guilty to first degree murder, but did not apply

the gun enhancement under 5-8-1(a)(1)(d)(iii) and capped Petitioner's imprisonment at 35 years. In June 2011, Petitioner accepted this offer, and the trial court sentenced him to 35 years' imprisonment to be followed by 3 years of mandatory supervised release. No appeal was filed.

On January 13, 2014, Petitioner filed a *pro se* post-conviction petition under the Post-Conviction Hearings Act, 725 ICLS 5/122-1 *et. seq.* ("PCHA"),[1] raising various claims, including that the gun enhancement—which was dropped as a result of his plea deal—was mandatory, and that he received ineffective assistance of counsel from the Public Defender's office who negotiated the 35-year plea cap without the mandatory gun enhancement. The trial court reappointed the Public Defender's Office to represent Petitioner, and they filed an amended post-conviction petition, which argued, in part, that Petitioner's sentence was void because it did not include the mandatory gun enhancement. The trial court granted the petition finding the judgment *void* based on *People v. White*, 953 N.E.2d 398 (Ill. 2011).[2] The trial court found that under *White*, "the parties could not drop the mandatory firearm enhancement triggered by 730 ILCS 5/5-8-1(a)(1)(d) as part of plea negotiations, and a sentence could not be imposed that did not include the mandatory enhancement, if the firearm was part of the factual basis of the plea." *Maggio*, 10-CF-1252 (Ill.

---

[1] The PCHA establishes a procedure for determining whether a criminal defendant was convicted in substantial violation of his constitutional rights. 725 ILCS 5/122-1(a). Upon receipt, the state court has 90 days to review the petition and determine, on its face, whether "the petition is frivolous or patently without merit." 725 ILCS 5/122–2.1(a)(2). If the petition is either frivolous or patently without merit, the state court "shall dismiss the petition in a written order." *Id.* A post-conviction is considered frivolous or patently without merit if its allegations fail to present the gist of a meritorious constitutional claim. *People v. Gaultney*, 675 N.E.2d 102 (Ill. 1996).

[2] In 2015, the Illinois Supreme Court abolished the void sentencing rule it applied in *White*, holding that lack of personal or subject matter jurisdiction renders a judgment *void* but that the failure to comply with a statutory requirement renders a judgment merely *voidable*. *People v. Castleberry*, 43 N.E.3d 932 (Ill. 2015). *Castleberry* is consistent with prior decisions distinguishing void and voidable judgments. *See People v. Raczkowski*, 834 N.E.2d 596, 599 (Ill. App. Ct. 2005) ("A judgment is void (as opposed to voidable) only if the court that entered it lacked jurisdiction."); *see also People v. Davis*, 619 N.E.2d 750, 754 (Ill. 1993) ("Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time…By contrast, a voidable judgment is one entered erroneously by a court having jurisdiction and is not subject to collateral attack.") (citing 5 Callaghan's Ill. Crim. P. § 39.09 (1971)).

Cir. Ct. Sept. 8, 2014). On this basis, the trial court vacated the judgment and sentence, and reinstated the initial four counts of first-degree murder with the gun enhancements.

Prior to trial, a discovery order was entered requiring the parties to disclose witnesses they intended to call and details of their anticipated testimony. The week before trial, on January 20, 2015, the State met with several witnesses to review their trial testimony. These witnesses included Chief Doug Dillavou and Jared Ping from the Tolono Fire Department who responded to the scene. During their meeting, Dillavou and Ping told prosecutors that Petitioner said at the scene "Is he dead yet?" in an angry voice. These statements were not included in written reports.

A week later at the final pretrial conference, the State tendered to Petitioner's counsel statements made by witness Kayla Moore during an interview the prior week, stating: "[t]hese are statements that she made in interview with [the State]…at the end of last week, that may not have appeared in the police report, and we think the defense is entitled to that." (D. 18-1, p. 10). Dillavou and Ping's statements about what Petitioner said at the scene, however, were not disclosed.

**B. Trial**

The facts underlying Petitioner's conviction at trial are as follows. Petitioner and his younger brother, Mark, operated several businesses together. These include the Philo Country Store and two grocery stores, the Tolono IGA, and the Arcola IGA. The brothers initially worked together at the Tolono IGA and later opened the Arcola IGA in April 2008. (D. 18-3, p. 2). Around that same time, the brothers' personal relationship began to deteriorate due, in part, to financial strain at the Tolono IGA. (D. 18-2, p. 181). By March 2009, Mark left the Tolono IGA to manage the Arcola IGA, while Petitioner remained at the Tolono IGA. At this time, the brothers no longer spoke to one another and only communicated about the businesses through third parties.

On morning of July 21, 2010, Petitioner was working at the Tolono IGA. He later went home for lunch, and when he returned he saw Mark's truck in the parking lot. Petitioner testified that the last time he had seen Mark in the Tolono IGA was in February 2010, when he had caught a former employer giving Mark personal financial information. Petitioner went inside the store and saw Mark talking to an employee, Brent Wilson, about business affairs near the dairy section. Petitioner confronted Mark, calling him a derogatory name to entice him to leave. In response, Mark punched Petitioner in the stomach causing him to fall to the floor and knocking his glasses off. While Petitioner was on the floor, Mark kicked him several times in the stomach. While Mark was kicking him, Petitioner "pulled his gun on him," which he always carried at work after several armed robberies at their stores. Mark froze for a moment and eventually began running towards the front door. Petitioner, who was not wearing his glasses, testified that as Mark was going out the door, he turned lifting his right arm "like he has a gun," and Petitioner thought he saw a flash and decided to shoot. (D. 18-5, pp. 14, 18). After Petitioner shot at Mark, he fell outside the door on his back.

Someone in the store called 911, and several minutes later Tolono Chief of Police Richard Raney arrived at the scene. At trial, Officer Raney testified that when he arrived he saw Mark laying on his back and Petitioner told him that his brother had beaten him up and he shot him in self-defense. (D. 18-1, p. 54). Initially, Officer Raney could not see any injuries, but when he checked Mark's pulse he noticed that he was not breathing and saw a bullet wound under his armpit. *Id.* at pp. 54–55. Officer Raney notified dispatch that he needed medical assistance. As he was finishing the transmission, he saw the Chief of the Tolono Fire Department, Doug Dillavou, off to his right and flagged him over. Shortly thereafter, several other firefighters arrived, and Officer Raney and a firefighter began taping off the area. *Id.* at p. 59. Officer Raney then took the

gun from Petitioner and, after securing the weapon, put Petitioner in a customer service cubicle and asked him to wait there until the sheriff's department arrived. *Id.* at p. 64. Officer Raney did not testify to hearing Petitioner make any statements asking if his brother was dead yet.

  1. **Tolono Fire Department Responders' Testimony**

The following members of the Tolono Fire Department who were dispatched to the scene to provide emergency medical services also testified at trial—namely, Doug Dillavou, Jared Ping, Sean Manuel, and Kyle Hayden. For ease of reference, the Court provides excerpts, in verbatim, from the Illinois Appellate Court's opinion *People v. Maggio*, 2019 IL App (4th) 170820-U, as it is relevant to the issues before this Court. (D. 18-17).[3]

> The first to testify was Doug Dillavou, chief of the Tolono Fire Department. Chief Dillavou testified that he knew defendant and Mark for "quite a few years." He arrived at the scene, where he saw Chief Richard Raney and Mark. Chief Dillavou checked Mark's pulse and for breathing and observed no signs of life. At some point, while Chief Dillavou was talking to Chief Raney, defendant approached and said, "[I]s he dead yet?"
>
> Jared Ping, a member of the Tolono Fire Department, testified that he was dispatched to the scene to provide medical services to the victim. Just after he arrived at the store and while the fire department personnel "were placing AED pads," defendant walked up and asked, "[I]s he dead yet?" Defendant did not look distraught.
>
> After Ping testified, defendant moved for a mistrial or, in the alternative, to strike Chief Dillavou's and Ping's testimony that defendant asked if Mark was "dead yet[.]" Defendant argued that neither witness reported this statement before trial. Defendant further argued the State knew as early as the week before these "very damaging statements" would be made on the record but did not disclose them. In response, the State argued the evidence was not exculpatory and need not be disclosed as defendant had the opportunity to interview these witnesses.
>
> The trial court concluded the State committed a discovery violation. The court, however, observed there existed "a judicial preference for a continuance or a recess, and [the] exclusion of the evidence is the last resort when that would be ineffective." The court reasoned no one argued had the information been disclosed earlier, "there would have been any difference in terms of the cross[-]examination."

---

[3] Facts from the Illinois Appellate Court's opinions are presumed correct on habeas review, unless Petitioner rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

> The court indicated it would afford defendant the opportunity for a continuance and to interview the witnesses further. The court denied the request for a mistrial or to strike the testimony. The court then gave defense counsel time over the lunch recess to determine "what relief you're seeking."
>
> After recess, the trial court provided defense counsel the opportunity to request specific relief in regards to the late disclosure of the statements. Counsel asked the trial court to "reserve any potential remedy." Counsel reported the following, asking for additional time:
>
>> "We are attempting to contact some witnesses, doing things that we might've done last week had we known this information. A number of these firefighters are at a funeral today after one of their fellow colleagues passed away due to cancer. We are hoping to get some information and perhaps could ask from some other potential remedy either later this afternoon or tomorrow, if the court would allow us to."
>
> The trial court granted counsel the time he sought and told counsel to "[s]imply call it to my attention then if you're at a point where there is some relief you're seeking."
>
> When the testimony resumed, Sean Manuel, an employee of the Tolono Fire Department, testified he and other members of the fire department were attending to Mark. While doing so, Manuel saw defendant standing to the side of Mark's head. Defendant began kicking Mark and, with a stern voice, "asking or stating, is he dead[.]" Manuel believed defendant made the statement two or three times. When defendant made these statements, Chief Dillavou was next to the soda machine on the radio with other agencies. Ping, Hayden, and Manuel were next to Mark.
>
> Kyle Hayden, a lieutenant with the Tolono Fire Department, testified he responded to the IGA upon receiving a call regarding the shooting. According to Lieutenant Hayden, he, Chief Dillavou, Ping, and Manuel applied emergency medical procedures on the victim. While Lieutenant Hayden was working on Mark, defendant approached. Lieutenant Hayden heard defendant say in a "very calm" voice, "[I]s he dead? Is he dead?" Defendant, at the time, was standing near Mark's feet. Lieutenant Hayden did not see defendant kick Mark.
>
> Ultimately. the jury found defendant of guilty of first-degree murder. The trial court sentenced defendant to 65 years' imprisonment.

(D. 18-17).

### C. Direct Appeal and Post-Conviction Proceedings

Defendant appealed his conviction and sentence. The Illinois Appellate Court affirmed his conviction but remanded for resentencing finding the trial court erred in considering Petitioner's refusal to participate in the presentence investigation in aggravation. (D. 18-11). Petitioner was resentenced to 64 years' imprisonment, and his sentence was affirmed on appeal. (D. 18-13).

Petitioner then filed a *pro se* post-conviction petition, which the trial court dismissed at the first stage finding the issues waived and without merit. *Id.* Petitioner appealed, and his appellate counsel argued that the post-conviction petition had presented arguably meritorious claims for ineffective assistance of trial and appellate counsel. Specifically, Petitioner's appellate counsel argued:

> "that the testimony of Doug Dillavou and Jared Ping from the Tolono Fire Department that [Maggio] walked up to them and asked if Mark was 'dead yet,' and that one of them said [Maggio] kicked Mark should have been stricken because those statement were not disclosed to the defense in discovery."

*Id.* at pp. 14–16.

Petitioner's appellate counsel further argued that trial counsel was ineffective for failing to obtain any remedy for the discovery violation and the later appellate counsel was ineffective for failing to raise this issue on appeal. *Id.* at pp. 14–16. The State agreed that the trial court erred when it found Petitioner forfeited his ineffective assistance of counsel claims but did not err in dismissing his petition because the claims were nevertheless meritless. (D. 18-15, p. 5).

The Illinois Appellate Court affirmed, finding Petitioner's allegations were insufficient to state the gist of a constitutional claims for ineffective assistance of counsel stating:

> In this case, at the close of Ping's testimony, trial counsel moved for a mistrial and to strike Chief Dillavou's and Ping's testimony defendant asked if Mark was "dead yet[.]" The trial court agreed the State committed a discovery violation but denied the Motion to strike or for a mistrial. Instead, the Court offered counsel other relief, such as additional time to interview witnesses, as needed. Later in the State's case,

7

> two additional witnesses, Lieutenant Hayden and Manuel, testified defendant asked if Mark was "dead yet[.]" In these circumstances, it is not arguably unreasonable for trial counsel not to ask the court to reconsider its decision not to strike the testimony of Chief Dillavou and Ping. The trial court already denied such a request…Trial counsel's decision to avoid reminding the jury of this testimony, particularly after the jury heard two additional witnesses testify to the same, is a reasonable exercise of trial strategy and not arguably objectively unreasonable. (citations omitted).

(D. 18-17, pp. 4-5). The Illinois Appellate Court also found Petitioner failed to show that it is arguable that he suffered prejudice due to his counsel's performance because there was not a reasonable probability that the results of the proceedings would have been different even if Dillavou's and Ping's testimony was stricken, citing to two other witnesses that testified to hearing Maggio ask if Mark was dead yet. *Id.* at p. 5.

Petitioner then filed a *pro se* PLA to the Illinois Supreme Court, arguing that (1) his appellate defender failed to address on direct appeal that his trial counsel failed to remedy the discovery violations, which in turn violated his right to due process, and (2) and that his trial and appellate attorneys were ineffective for not addressing these issues. (D. 18-18). The Illinois Supreme Court denied the PLA. (D. 18-19).

### D. Section 2254 Petition

Petitioner then filed a § 2254 Petition in this Court, which raises three grounds for habeas corpus relief: (1) ineffective assistance of counsel due to Petitioner's trial counsel failing to move for the trial court to reconsider its denial to call a mistrial due to discovery violations which prejudiced the jury; (2) denial of his right to a fair trial due to his incompetent counsel that should have asked the trial court to reconsider a mistrial due to the jury being prejudiced from the discovery violations, which violated his right to due process under the Fourteenth Amendment; and (3) that he was denied his right to due process, because he received an unfair trial due to the discovery violations. (D. 1, pp. 8–10).

8

## II. Legal Standard

To seek federal habeas relief, a petitioner in custody under a state court judgment must first exhaust state court remedies by presenting each claim "through one complete round of review in state court." *Gonzales v. Eplett*, 77 F.4th 585, 590 (7th Cir. 2023); 28 U.S.C. § 2254(b)(1). If the exhaustion requirements are met, then a federal court may address the merits of a petitioner's claims but must defer to "the last reasoned state court decision reached on the merits." *Gonzales*, 77 F.4th at 591. A federal court may grant habeas relief only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d); *Armfield v. Nicklaus,* 985 F.3d 536, 540–41 (7th Cir. 2021). Federal habeas review is not "a substitute for ordinary error correction through appeal," but rather "is an extraordinary remedy that guards against extreme malfunctions in the state criminal justice systems." *Shinn v. Ramirez,* 596 U.S. 366, 367 (2022) (internal citations omitted).

A state court's decision is "contrary to" clearly established federal law "if the state court 'applie[d] a rule different form the governing law set forth' in Supreme Court decisions or decided a case differently than the Supreme Court 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). *Jewell v. Boughton*, 90 F.4th 1199, 1203–04 (7th Cir. 2024) (quoting *Scott v. Hepp*, 62 F.4th 343, 346 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)(1)). An "unreasonable application of" clearly established federal law occurs when "the state court correctly identified the governing rule from Supreme Court precedent but "unreasonably applie[d] it to the facts of the particular case." *Corral*, 4 F.4th at 582 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). This requires the petitioner to

9

"show that the state court's ruling…was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citations omitted). This Court's review is limited to the record that was before the state court.

### III. Discussion

Before this Court may consider the merits of the § 2254 petition, Petitioner must clear two procedural hurdles: exhaustion of remedies and procedural default. To satisfy the exhaustion requirements, a petitioner is required to not only "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), but also to "fairly present the federal nature of his claims to the state court by submitting 'both the operative facts and the controlling legal principles.'" *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (quoting *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "If a petitioner fails to properly assert a federal claim at each level in the state court system, the claim is procedurally defaulted." *Sanders v. Radike*, 48 F.4th 502, 509 (7th Cir. 2022). In Illinois, a habeas petitioner must present the claim to both the Illinois Appellate Court and the Illinois Supreme Court in a petition for discretionary review. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018).

#### A. Procedural Default

Respondent argues that this Court cannot review the petition because the claims are procedurally defaulted. (D. 17, pp. 9–11). Procedural default bars the Court from considering the merits of the claim and may be excused only if a petitioner demonstrates either (1) "cause for the default, and prejudice attributable thereto," or (2) "that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotations and citations omitted).

10

1. **Due Process claims**

In Grounds 2 and 3, Petitioner claims that his right to due process under the Fourteenth Amendment of the United States Constitution was violated because of discovery violations that prejudiced the jury and denied him a fair trial. (D. 1, pp. 9–10). These claims are procedurally defaulted. To satisfy the exhaustion requirements, a petitioner is required to not only "invok[e] one complete round of the State's established appellate review process," *Boerckel*, 526 U.S. at 845, but also to "fairly present the federal nature of his claims to the state court by submitting 'both the operative facts and the controlling legal principles.'" *Crockett*, 542 F.3d at 1192 (quoting *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008)). "If a petitioner fails to properly assert a federal claim at each level in the state court system, the claim is procedurally defaulted." *Sanders v. Radike*, 48 F.4th 502, 509 (7th Cir. 2022). Here, Petitioner did not raise due process arguments before the Illinois Appellate Court, and thus, he failed to "fairly present" it "through at least one complete round of state-court review." *Clemons*, 845 F.3d at 819. Petitioner also does not provide any grounds for excusing procedural default.

2. **Ineffective Assistance of Counsel Claim**

Ground 1, and to the extent it can be argued Ground 2, asserts claims for ineffective assistance of counsel. Respondent incorrectly argues that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because Petitioner did not present the discovery error as a federal constitutional issue to the Illinois Appellate Court, and instead, argued that the nondisclosure violated Rule 412. This is incorrect. The issues raised in Petitioner's post-conviction petition appeal were whether his trial counsel was ineffective for "failing to renew his motion to strike state witness testimony about alleged statements by the defendant which had not been disclosed to the defense" and whether he received ineffective assistance of appellate counsel for

11

"failing to raise the trial court's failure to properly remedy said violation on direct appeal." (D. 18-14, p. 5, "*Issue Presented for Review*").

The PLA also raises the issue of ineffective assistance of counsel relating to "two discovery violations at trial" that his two defense attorneys failed to remedy, and his appellate counsel failed to address on direct appeal. (D. 18-18, p. 3). The PLA, however, does not provide any factual basis as to what the "two discovery violations" were. *See id.* The PLA also cites to *Strickland v. Washington*, 466 U.S. 668, 688 (1984), the Supreme Court case governing ineffective assistance of counsel claims, but no constitutional analysis of his claim is provided. *Id.* Rather, Petitioner simply argues for the first time that his due process right and right to a fair trial were violated due to his trial and appellate attorneys' performance. *Id.* Respondent also argues that Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted because he never made the claim to the state court that his counsel was ineffective for not renewing his motion for a mistrial, only for not renewing the motion to strike.

Claims may be barred by procedural default even when a petitioner has pursued his state-court remedies to exhaustion. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) ("[W]hen the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim."). A "fairly presented" claim "must place before the state court both the controlling law and the operative facts in a manner such that the state court was sufficiently altered to the federal constitutional nature of the issue to permit it to re-solve the issue on that basis." *Hicks v. Hepp*, 871 F.3d 513, 530 (2017) (internal quotations omitted). Federal courts typically consider four factors when determining whether federal habeas claims have been "fairly presented" to state courts:

> 1) whether the petitioner relies on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 531 (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)). Ultimately, this Court must determine whether the state courts "were sufficiently alerted to the nature of [Petitioner's] federal constitutional claims." *Id.* (internal quotations and citations omitted). Here, the Court finds that Petitioner has not met that burden.

As an initial matter, Petitioner only presents a claim for ineffective assistance of trial counsel, not appellate counsel, for habeas review. Like his PLA to the Illinois Supreme Court, he contains no operative facts or controlling law in his petition to support it. First, Maggio's vague reference to "two discovery violations" and to *Strickland v. Washington* in his PLA to the Illinois Supreme Court neither alerted it to the operative facts of his claims nor provided a constitutional analysis of the controlling federal law. Second, his PLA argues for the first time that his counsel's performance violated his right to due process and a fair trial, but he does not explain why or how, for example, that argument could have applied to the prejudice prong under *Strickland*. This is insufficient to meet his burden of fairly presenting the claim to the Illinois Supreme Court. Thus, because the PLA did not allow the Illinois Supreme Court the opportunity to address his ineffective assistance of counsel claim, procedural default precludes our review of this issue. Furthermore, Maggio's § 2254 petition, which only presents a claim for ineffective assistance of trial counsel not appellate counsel, similarly contains no operative facts or controlling law in his petition to support it.

Even had it not been procedurally defaulted, this claim is without merit. The issue Petitioner alleges trial counsel should have raised relating to the testimony that was admitted in

13

violation of the discovery order, were reviewed by the Illinois Appellate Court and found to not have merit. (D. 18-17). Thus, Petitioner must show the Illinois Appellate Court's decision was either contrary to clearly established Supreme Court precedent or an unreasonable application in the State Court proceedings. *See* § 2254(d)(1) and (2). His § 2254 petition does not attempt to do either.

*Strickland's* precedent governs Sixth Amendment ineffective assistance of counsel claims and requires a petitioner to show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Performance is deficient when an attorney makes serious errors so that it was not functioning as "counsel" guaranteed by the Sixth Amendment. *Id.* Prejudice is shown when the deficient performance makes the result of the trial unreliable. *Id.* There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Minnick v. Winkleski*, 14 F.4th 460, 468 (7th Cir. 2021). Because the *Strickland* test requires both deficient performance and prejudice, an ineffective assistance of counsel claim will fail if either prong of the test is not met. *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020); *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

The Illinois Appellate Court's analysis was not "contrary to" the two-prong test set forth in *Strickland*. First, they found that trial counsel's performance was not deficient, pointing out strategic reasons for Petitioner's counsel not to ask the trial court to reconsider its decision not to strike Dillavou's and Ping's testimony or ask for a mistrial. Specifically, the Illinois Appellate Court's opinion points out that this request had already been denied, and that "[t]rial counsel's decision to avoid reminding the jury of this testimony, particularly after the jury heard two additional witnesses testify to the same, is a reasonable exercise of trial strategy and not arguably

objectively unreasonable." (D. 18-17, p. 5). The Illinois Appellate Court further found that Petitioner was not prejudiced by his trial counsel' performance because there was not a reasonable probability that the results of the proceedings would have been different even if Dillavou's and Ping's testimony was stricken, citing to the two other witnesses that testified to hearing Petitioner asks "is he dead yet." *Id.* Based this, the Illinois Appellate Court's decision was not "contrary to" or a misapplication of *Strickland*. Petitioner also does not present an argument as to how this was an unreasonable determination of the facts in his § 2254 petition.

### IV.     Conclusion

For the reasons set forth above, Petitioner Brian Maggio's [1] Petition for Writ of Habeas Corpus is DENIED. This action is DISMISSED with prejudice. The Clerk is DIRECTED to close this case.

### V.     Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability.

Petitioner may reapply for a certificate of appealability to the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

IT IS SO ORDERED.

ENTERED this 30th day of May, 2024.

                                            /s/ Michael M. Mihm
                                            Michael M. Mihm
                                            United States District Judge